STATE, ALPHONSO HUBBARD ET AL., PROSECUTORS, v MAYOR AND ALDERMEN OF THE CITY OF PATERSON.

The act incorporating the city of Paterson creates a department of health, and enacts that for the preservation and promotion of the health of the city, that department shall have power (among other things) to regulate and control the manner of erecting and constructing dwelling-houses and other buildings in said city ; it contains no general welfare clause or clause conferring general police powers. *Held*, that the power to regulate the erection, &c., of buildings extends only to such matters as affect health in the sense of freedom from disease, and does not justify a regulation requiring the outside walls of buildings to be of a specified thickness.

On *certiorari*.

Argued at February Term, 1883, before Justices DIXON and MAGIE.

For the prosecutors, *J. S. Barkalow.*

For the defendants, *J. W. Griggs.*

The opinion of the court was delivered by

MAGIE, J. Prosecutors were arrested by virtue of a warrant issued by the recorder of the city of Paterson upon a complaint in a summary proceeding, charging them with having erected a building within the fire limit of that city, the outside walls of which were of less thickness than was prescribed by an ordinance of said city entitled "An ordinance establishing a fire limit in the city of Paterson and concerning the erection of buildings therein." The proceeding was intended to enforce a penalty for the violation of the ordinance in the respect complained of. Prosecutors thereupon sued out this *certiorari,* which has removed here the proceeding and the ordinance under which it was taken.

Their insistment is (1) that the ordinance was not within the powers conferred on the city by the act of incorporation; and (2) that if such powers have been conferred, the ordinance is, in this respect, unreasonable. In either case the proceeding is claimed to be without foundation.

The ordinance under the above-mentioned title establishes a boundary or fire limit within the city of Paterson, and, among other things, prescribes that the outside walls of all buildings erected within that limit shall be constructed of stone, brick or other fire-proof material, and shall be of a specified thickness, varying in proportion to the height of the walls.

The charter in force in the city of Paterson is the act entitled "An act to provide for the more efficient government of the city of Paterson," approved March 23d, 1871. *Pamph. L., p.* 808.

This act does not contain any clause such as is commonly called the "general welfare" clause. Nor is there in it any grant of general police powers. The authority for the ordinance in question, if conferred, must be found in the one

hundred and fiftieth section. By subdivision 3 of that section, power is given to the board of aldermen "to regulate and control the manner of erecting and constructing dwelling-houses and other buildings in said city."

This language is broad enough to authorize ordinances regulating the thickness of walls of such buildings, unless its meaning is limited by other parts of the section. The powers conferred by the various subdivisions of section 150 are expressly declared to be granted "for the preservation and promotion of the health of said city." That section, the one immediately preceding and several following it, are included under title IX. of the act, denominated "of the department of health."

The contention is that the power to regulate and control the mode of constructing buildings, when given for the preservation and promotion of health, justifies such regulations as respect sanitary conditions and appliances alone, and not such as respect the thickness of the walls—a matter which, it is insisted, can produce no effect on the health of the city.

If the word "health" is to be understood as expressing merely the absence of disease, the contention is effective. But the word has a broader meaning. According to the lexicographers, health is "soundness of body; freedom from disease, sickness or pain."—*Worcester*; "freedom from pain or sickness; the most perfect state of animal life."—*Bouvier*. It is said to be derived from an Anglo-Saxon word, of which we yet retain a trace in the word "hale," and which may be rendered "whole" or "sound."

If this meaning be attributed to the word in this act, the powers given to preserve and promote health would naturally include not only such as would tend to prevent the origin or development of disease and its dispersion by contagion or infection, but also such as would tend to prevent the occurrence of bodily injuries or accidents. The word would then include the idea of safety as well as health in its ordinary and colloquial signification. In the charters of some municipal corporations such powers are expressly given for the preservation

of the health and safety of citizens. But I am unable to conclude that we ought to attribute to the word " health," as used in this title, the broad meaning above referred to, which, though a correct, is not its usual meaning.

When we find that the legislature, by these sections, established a department of health and conferred powers for the preservation and promotion of health, the natural inference is that the department is charged with the execution of such sanitary measures as tend to prevent or diminish disease. Such are the ordinary functions of boards of health in cities or other municipal corporations in this state. There ought to be found in this act language clearly evincing that other functions are intended to be conferred on this department in Paterson before we would be justified in reaching such a conclusion.

The one hundred and fiftieth section contains six subdivisions. Each contains a group of the powers given for the preservation and promotion of health. Most of them are in harmony with the view that health bears the ordinary signification. Thus power is given by subdivision 1 to abate nuisances; by subdivision 2, to regulate trades and acts which may become noxious; by subdivision 4, to regulate tenement and lodging-houses, &c.; by subdivision 6, to require connections with sewers for drainage purposes. The power given by subdivision 3 may be naturally interpreted in harmony with the same view. Subdivision 5, however, is of a different character. It gives power to regulate, control or prohibit the erection of buildings of combustible materials within limits to be fixed, and other powers, the plain design of which is to prevent the origin and spread of fires. Among them, two powers are given; one, to regulate or prohibit the use of firearms in the city; the other, to require the providing of adequate fire-escapes. These two powers may be claimed to indicate a design to preserve the safety as well as the health of citizens. But the claim cannot be considered to be well founded, when we notice that they are placed in connection with other powers, the relation of which to the subject of either safety or health it is impossible to conclude was in-

tended; for it would be a strained and unnatural construction to treat the gift of powers to prevent fires as designed, except in an incidental way, to preserve or promote the safety of citizens from bodily injury. But we are not required to determine what force is to be attributed to subdivision 5, or so much of the ordinance as depends on it. It may be that when tested that subdivision will be found lacking in efficiency, because its powers are incapable of being used for the purposes for which they were granted. But if efficient, the ordinance is not aided in the respect complained of, because no power is given therein to regulate the thickness of walls. That power must be derived from subdivision 3.

Looking at the whole section, there is nothing, in my judgment, sufficient to justify the conclusion that the purpose for which these powers were granted was other than the preservation of health in the ordinary meaning of freedom from disease.

The provisions of section 151 are urged as indicating a different view. That section directs the department to use means to avert peril to life and health, and to do certain acts contributing to the promotion of the health or the security of life in said city. These clauses do not, however, require the broader meaning of health. For life is in peril from disease, and that which tends to preserve health tends to secure life.

So much, therefore, of the ordinance under review as prescribes a specific thickness of walls, is beyond the power conferred by this act, and must be set aside, together with the proceedings taken thereon against prosecutors. Prosecutors are entitled to costs.